UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Emmanuel Akoto,
     Petitioner

     v.                             Case No. 24-cv-47-SM-TSM
                                      Opinion No. 2025 DNH 062

The United States of America,
     Respondent


**O R D E R**


A federal grand jury indicted petitioner, Emmanuel Akoto, charging him with three counts of wire fraud, one count of conspiracy to commit wire fraud, and two counts of aggravated identity theft – all stemming from his participation in an international scheme to use stolen personal identifying information to file fraudulent tax returns with the Internal Revenue Service. Prior to trial, Akoto received, but rejected, three plea offers from the government. At trial, he testified in his own defense. He was convicted on all counts and sentenced to serve a term of 70 months in prison based upon the court's determination that he and his coconspirators had filed at least 310 fraudulent tax returns, with an intended loss of more than $1.3 million. His convictions and sentence were

affirmed on appeal.  <u>United States v. Akoto</u>, 61 F.4th 36 (1st Cir. 2023).[1]

Akoto now seeks relief pursuant to 28 U.S.C. § 2255, asserting that he was provided ineffective assistance of counsel during pre-trial plea negotiations, throughout the course of trial, and at sentencing.  The government objects.  For the reasons discussed, Akoto's petition is denied.

### Standard of Review

"To succeed with an ineffective assistance of counsel claim under 28 U.S.C. § 2255, a petitioner must show both that his counsel's representation fell below an objective standard of reasonableness (the performance prong) and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different (the prejudice prong)."  <u>Casey v. United States</u>, 100 F.4th 34, 42–43 (1st Cir. 2024) (citation and internal punctuation omitted).

---

[1]    Akoto's 70-month sentence breaks down as follows: 46 months for each of the four wire fraud counts, to be served concurrently, and 24 additional months for each of the two aggravated identity thefts counts, to be served concurrently with each other but consecutive to the wire fraud counts.

To carry his burden on the "performance prong" of the analysis, petitioner must demonstrate that "given the facts known at the time, counsel's choice [of trial strategy] was so patently unreasonable that no competent attorney would have made it." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010).  In determining whether petitioner has met that burden, the court must "strongly presume" that the attorney "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. 668, 690 (1984).  With respect to the "prejudice prong," petitioner must show a "reasonable probability" that, but for counsel's errors, the result of the trial would have been different - that is, his showing must be "sufficient to undermine confidence" in the verdict.  Id. at 694.  "The petitioner bears a heavy burden on each prong." Casey, 100 F.4th at 43.

Finally, as to his claims asserting deficient performance during plea negotiations, "the prejudice prong requires [petitioner] to prove that the outcome of the plea process would have been different with competent advice.  That is, [petitioner] must demonstrate a reasonable probability [he] would have accepted a lower plea offer and that the plea would have been entered without the prosecution canceling the offer or

the trial court refusing to accept it." Torres-Estrada v. United States, 122 F.4th 483, 494 (1st Cir. 2024) (citations and internal punctuation omitted).

## Discussion

I.    Plea Negotiations.

Akoto asserts that on September 17, 2019, the government extended a plea offer pursuant to which Akoto would plead guilty to a single count of wire fraud. Later that day, says Akoto, "my lawyer forwarded me the government's email with a message that said 'Please see below email from the government regarding their offers for you to plead guilty, which we have already discussed. Please let me know if you have any additional questions regarding these. My intention is to advise the government that you do not wish to accept an offer to plead guilty.'" Petition (document no. 1) at 5 (emphasis supplied). But, says Akoto, "my lawyer never explained this offer and what it meant to me.   . . . Specifically, I did not understand that if I was convicted at trial, 24 months would be added automatically to my sentence because of the aggravated identity theft charges. If I had understood that risk, I would have accepted the government's offer to avoid the risk of two extra years being added onto my sentence" Id.

What Akoto neglects to mention is that prior to trial, the government extended three plea offers, only the last of which he claims was inadequately explained.  First, in early August, the government offered a plea to one count of wire fraud and one count of aggravated identity theft (the latter of which would carry a mandatory 24-month sentence consecutive to any sentence for wire fraud).  Akoto rejected the deal and his attorney informed the government that, "The defendant is intent on going to trial."  Email from Defense Counsel dated August 15, 2019 (document no. 5-1) at 3.  Four days later, the government offered Akoto the opportunity to plead guilty to a single count of wire fraud.  Defense counsel responded, saying "I spoke with Mr. Akoto and he wants to talk it over with his wife, who is at work right now.  Is getting back to you tomorrow okay?"  Id. at 9.  On August 23, defense counsel followed up by notifying the government that, "It seems we're going to trial.  I thank you for your efforts to resolve the case."  Id. at 11.  Finally, on September 17, 2019, the government summarized the offers previously extended to Akoto and once again offered him the opportunity to plead guilty to a single count of wire fraud (the same offer extended in August that Akoto needed time to consider and discuss with his wife).

> Now that we have a date certain for the trial, I would
> like to (1) make sure we are on the same page

regarding plea offers and possible plea offers that
have been made, and (2) see if there is any chance of
resolving this matter with a plea before I cancel my
plans to be out of the state during the week trial is
now scheduled.

We initially made a formal offer to allow Mr. Akoto to
plead guilty to two counts, one being wire fraud and
the other being aggravated identity theft.  A
conviction on the latter count would require a
<u>mandatory minimum 24 month sentence consecutive</u> to the
guideline sentence imposed on the former count.  You
advised us that Mr. Akoto rejected that offer.

We later told you that we would be willing to make an
offer for Mr. Akoto to plead guilty to <u>only the wire</u>
<u>fraud count</u>.  We asked you to confer with your client
to see if he would accept such an offer, and you
advised us that he would not.

We now have a date certain for trial with jury
selection on Wednesday, October 16, 2019 and trial
beginning on Monday, October 21, 2019.  <u>So there will</u>
<u>be no misunderstanding, although Mr. Akoto has</u>
<u>rejected our offers, we will allow  Mr. Akoto to plead</u>
<u>guilty to the wire fraud count only</u>, but only if he
agrees to that at or before 5:00 pm EST, 2:00 pm PST,
Friday, September 27, 2019.

Email dated September 17, 2019, from Prosecuting Attorney to

Defense Counsel (document no. 5-1) at 14-15.


    Independent of any advice that defense counsel provided to

Akoto, that email alone clearly explains that the government's

most recent plea offer, if accepted, would allow Akoto to avoid

the 24-month mandatory sentence associated with a conviction for

aggravated identity theft.  And Akoto acknowledges that defense

counsel forwarded a copy of that email to him.  <u>See</u> Petition at

5 (stating that counsel advised Akoto to "please see email below from the government regarding their <u>offers</u> for you to plead guilty.") (emphasis supplied).  Defense counsel responded to the government, saying "Thanks for this email.  I'll be responding to it <u>after I consult again</u> with my client."  Email dated September 17, 2019, from Defense Counsel to Prosecuting Attorney (document no. 5-1) at 14 (emphasis supplied).  It is that September plea offer that Akoto claims was inadequately explained to him.

Absent from Akoto's petition is any mention of the fact that he received an identical plea offer from the government a month earlier; he discussed that plea offer with his attorney; he asked for additional time so he might consider it and speak with his wife about it; and, having done so, he then rejected it.  There is no suggestion that he failed to understand the consequences of rejecting <u>that</u> (earlier, but identical) plea offer or that his attorney failed to explain the consequences of doing so to him.  And, the government's email of September 17, 2019, clearly referenced the consequences of rejecting the plea offer (including the mandatory 24-month consecutive sentence for aggravated identify theft if convicted).

Given the record evidence, Akoto cannot bear the heavy burden of demonstrating that he would have accepted the government's third (identical) plea offer if only his counsel had better explained the details to him.  See Torres-Estrada, 122 F.4th at  494.  Moreover, as the government points out, given that Akoto rejected two prior plea offers, testified in his own defense, and his attorney told prosecutors that he was "intent on going to trial," his "apparent insistence on his innocence belies any notion that he would have pled guilty." Alaniz v. United States, No. 5:10-CR-1420-2, 2015 WL 12803705, at *7 (S.D. Tex. Jan. 25, 2015).

II.  The Trial.

Next, Akoto claims that defense counsel provided constitutionally deficient representation during the course of trial.  First, Akoto generally claims that his attorney was poorly prepared, distracted, and actually fell asleep during trial.  That latter claim appears to arise out of an exchange between the court and counsel during the second day of trial. In response to questions from the court, defense counsel apologized to the court for being "a little bit spacey" at the moment and explained that he hadn't slept well the night before because he was worried about a family matter.  See Trial Transcript, Day Two, Afternoon Session (document no. 118) at

8

page 43, ln. 13-25; page 45, ln. 23 - page 46, ln. 7.  Nothing
in the record suggests counsel fell asleep, nor does the court
recall that happening.  Perhaps more importantly, and despite
Akoto's conclusory claims to the contrary, there is no
suggestion that counsel's disturbed sleep the night before day
two of the trial adversely affected his performance in any way.
Taken as a whole, defense counsel presented a plausible,
coherent, and competent defense – a particularly challenging
endeavor given the extraordinary weight of the documentary and
testimonial evidence against Akoto (which included, among other
things, testimony from one of Akoto's co-conspirators).

Next, Akoto claims he was prejudiced by defense counsel's
failure to raise a statute of limitations defense as to one of
the aggravated identify theft charges (count five).  That claim
lacks merit.  The indictment was timely on its face.

Akoto was indicted on November 29, 2017.  Counts five and
six charge that he committed identity theft from "at least as
early as November 2011" and through "at least as late as March
13, 2013."  But, says Akoto, the aggravated identify theft crime
charged in count five of the indictment actually occurred on
November 20, 2012, the date on which the fraudulent tax return
associated with that count was filed.  Consequently, he believes

the indictment was handed down more than five years after the

crime – that is, from November 20, 2012 to November 29, 2017 -

and, therefore, beyond the five-year limitations period.

Although the Court of Appeals did not resolve Akoto's

ineffective assistance/statute of limitations claim on appeal,

it did make the following observations:

> The government argues that Count Five was timely for
> three reasons:  First, the charging language in the
> indictment expressly alleged that the offense
> continued "at least as late as March 13, 2013," and
> the inclusion of the earlier date on which the tax
> return was filed should not override this charging
> language.
>
> Second, Count Five was timely as a continuing offense:
> aggravated identity theft requires the commission of a
> predicate felony, the statute of limitations does not
> begin to run until the predicate felony is completed,
> and the predicate felony here - the conspiracy to
> commit wire fraud - lasted well into the statute of
> limitations period.
>
> Third, Count Five was timely as proven at trial
> because the refund associated with the false tax
> return was not issued until December 5, 2012, within
> the statute of limitations period, and because Akoto
> continued to "possess" the stolen identity information
> in his email account within this period.

United States v. Akoto, 61 F.4th at 41.  Without expressly

rejecting Akoto's claim, the court concluded by observing that,

"It is by no means clear, for reasons articulated by the

government, that a statute of limitations defense was obviously available to Akoto in this case." Id. at 42.

Because the indictment was timely on its face and, as noted by the appellate court, because no statute of limitations defense was "obviously available," counsel's decision not to raise such a defense is not subject to attack as having been constitutionally deficient. See generally Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999) (observing that when an attorney "fails to raise an important, obvious defense without any imaginable strategic or tactical reason for the omission, his performance falls below the standard of proficient representation that the Constitution demands.") (emphasis supplied).

Moreover, even if there had been a viable, non-frivolous statute of limitations defense to count five, Akoto suffered no prejudice from counsel's failure to address it. Count six of the indictment – which Akoto does not challenge – was timely and also charged Akoto with aggravated identity theft. And his conviction on count six exposed him to the very same 24-month mandatory consecutive sentence that he challenges with respect to count five. As noted above, Akoto was ordered to serve those two 24-month sentences concurrently. Consequently, he can show

no prejudice from counsel's failure to challenge count five as untimely.

Next, Akoto challenges his attorney's failure to hire and call an independent expert witness to explain to the jury about "IP addresses and what they mean."  Petition at 6.[2]  Akoto does not explain (and it is entirely unclear) how such an expert might have benefited his defense or how he was prejudiced by the lack of such a witness.  Moreover, the government's witness, Secret Service Agent Matthew O'Neill, explained to the jury precisely what an IP address is, as well as the significance of IP addresses in his investigation.  See Trial Transcript, Day One, Morning Session (document no. 117) at 44-47 (responding to the prosecutor's question, "I would ask [you] for a very short primer on what an IP address is, please").  Additionally, defense counsel ably cross-examined that witness and, in the process, made clear to the jury Akoto's defense: that someone else in the house used the computer and/or email addresses ostensibly linked to Akoto (by the IP addresses) to commit the crimes at issue.  See, e.g., Trial Transcript, Day Two, Morning

---

[2]    An IP Address (Internet Protocol Address) is a unique number assigned to each device on a network using the Internet Protocol.  Tracing certain IP addresses was, in part, how the government identified Akoto as one of the participants in the conspiracy charged in the indictment.

Session (document no. 112) at 8-10; Trial Transcript, Day Three, Morning Session (document no. 113) at 70-71.

In short, Akoto was not prejudiced by defense counsel's strategic decision not to employ an expert witness to explain computer IP addresses to the jury.  See generally Strickland, 466 U.S. at 689 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.) (citation omitted); Watson v. United States, 37 F.4th 22, 28 (1st Cir. 2022) ("Only when counsel's strategy was so patently unreasonable that no competent attorney would have made it may we hold such performance as deficient.") (citations and internal punctuation omitted).

III. Sentencing.

Finally, Akoto claims his counsel provided constitutionally deficient representation at sentencing.  Specifically, he claims counsel failed to challenge the government's calculation of "intended loss" and then failed to argue that the intended loss overstated the seriousness of his conduct.  Petition at 8.  That claim is, perhaps, his weakest.

First, it bears noting that defense counsel did argue –
successfully, as it turns out – that the government's intended
loss calculations for Akoto were too high and unsupported by the
evidence.  See Defendant's First Sentencing Memorandum (document
no. 78) at 2-3.  Indeed, following counsel's challenge to the
loss calculations, the government and the probation office
reexamined the record evidence and significantly revised the
original loss calculations downward from $2,363,349 (intended
loss) and $665,728 (actual loss) to $1,326,633 (intended loss)
and $551,601 (actual loss).  Compare Original Presentence
Investigation Report (document no. 73) at 5-6, with Revised
Presentence Investigation Report (document no. 86) at 6.

Then, once those loss calculations were revised downward,
defense counsel challenged them again, asserting that rather
than the roughly $1.3 million intended loss suggested by the
government, that number was more properly calculated at roughly
$360,000 – the same intended loss calculation used for Akoto's
coconspirator.  See Defendant's Second Sentencing Memorandum
(document no. 94) at 3-5.  Ultimately, the court agreed with the
government's downwardly-revised figures and concluded that Akoto
and his coconspirators had filed at least 310 fraudulent tax
returns, seeking slightly more than $1.3 million in refunds, of

14

which the IRS paid out $551,601.  Nevertheless, defense
counsel's argument did succeed in persuading the court that
Akoto merited a below-Guidelines sentence.  Accordingly, he was
sentenced to serve 70 months – significantly less than his
Guidelines range of 92-119 months.  <u>See</u> Transcript of Sentencing
Hearing (document no. 116) at 19-20 (referencing defense
counsel's sentencing memorandum and concluding that, "I find
that the imposition of a mandatory minimum sentence
consecutively to what would normally be the guideline range
would result in a sentence that's unnecessarily excessive in
view of the values to be served as set out in 18 U.S. Code,
Section 3553(a)").

Plainly, then, Akoto's claim that "at sentencing my lawyer
again basically failed to function as a lawyer at all," as well
as his conclusory assertions that counsel failed to prepare for
sentencing, neglected to adequately review the record, and
failed to argue why a Guideline sentence would be excessive, <u>see
generally</u> Petition at 8, are all undermined by the record.

IV.  <u>Appointment of Counsel</u>.

The court declines to appoint counsel to represent Akoto in
this habeas proceeding.  Although the court is authorized to
appoint counsel for a petitioner seeking relief under section

2255 "if the interests of justice so require," 18 U.S.C. §

3006A(a)(2)(B), the court of appeals has suggested that such

circumstances are "rare," United States v. Mala, 7 F.3d 1058,

1064 (1st Cir. 1993).  Akoto "has no constitutional right to

counsel with respect to habeas proceedings."  Ellis v. United

States, 313 F.3d 636, 652 (1st Cir. 2002).  To qualify for

appointment of counsel, a petitioner must:

> be indigent and the denial of counsel must result in
> fundamental unfairness impinging on the petitioner's
> due process rights.  When making a determination, the
> court must consider: (1) the likelihood of success on
> the constitutional claim; (2) the factual complexity
> and legal intricacy of the claim; and (3) the ability
> of the prisoner to investigate and develop the factual
> record necessary to the claim.

United States v. Teixeira, No. CR 04-10165-MLW, 2024 WL 4123711,

at *5 (D. Mass. Sept. 6, 2024) (citations omitted).  Here, none

of the relevant factors counsels in favor of appointing counsel

for Akoto.

## Conclusion

Akoto's claims are, at best, unsupported, vague, and

conclusory.  Perhaps more accurately, they are misleading and/or

directly contradicted by the record.  Akoto was more than

adequately represented by able and competent counsel.  The

weight of the evidence against him was overwhelming and

compelling.  And, as demonstrated by its verdict, the jury found Akoto's testimony to be self-serving and unworthy of belief.

In light of the forgoing, Akoto has not and cannot satisfy the second (prejudice) prong of the Strickland test.  That is to say, he cannot demonstrate that "there is a reasonable probability that, absent the [alleged] errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.  Indeed, it would be difficult to conclude that Akoto could satisfy even the first prong of the Strickland analysis – at least on the grounds asserted in his petition.

For the reasons discussed, as well as those in the government's thorough and well-supported objection (document no. 5), the petition for habeas corpus relief (**document no. 1**) is denied.  Akoto's motion for the appointment of counsel (**document no. 3**) is likewise denied.  The court declines to issue a certificate of appealability, but petitioner may seek such a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  See Rule 11, Federal Rules Governing Section 2254 Cases (2010); 28 U.S.C. § 2253(c).

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 15, 2025

cc:  Emmanuel Akoto, pro se
     Richard Kelley, Esq.